## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| EDMUND AWAH, | * | |
| | * | |
| Plaintiff, | * | |
| | * | Civil Action No. 8:21-cv-00938-PX |
| v. | * | |
| | * | |
| MANSFIELD KASEMAN HEALTH CLINIC, | * | |
| | * | |
| Defendant. | * | |
| | * | |
| | *** | |

## <u>MEMORANDUM OPINION</u>

Pending before the Court are Plaintiff Edmund Awah's motions to set aside ruling (ECF No. 72); suppress deposition transcript and testimony (ECF No. 77); request a subpoena (ECF No. 79); and for leave to file a sur-reply (ECF No. 84), as well as the motion for summary judgment filed by Defendant Mansfield Kaseman Health Clinic ("Mansfield Kaseman" or "the Clinic"). ECF No. 73. For the following reasons, Awah's motions are DENIED and Mansfield Kaseman's motion for summary judgment is GRANTED.[1]

### I.    Background

The following facts are undisputed except where otherwise noted. Mansfield Kaseman operates a health clinic for low-income individuals in Montgomery County, Maryland. ECF No. 73-4 at 1. Awah has received care from Mansfield Kaseman since February of 2011, during which time the Clinic was Awah's primary healthcare provider. ECF Nos. 73-2 at 4 & 73-4 at 6. Awah, a 69-year-old African American man, alleges that he has received disparately worse medical care from Mansfield Kaseman on account of his race. ECF No. 73-4 at 1.

---

[1] Also pending is Awah's motion for enlargement of time and request for a hearing. ECF No. 78. Awah's request for additional time to respond to the Clinic's motion for summary judgment is granted *nunc pro tunc*. Awah also requests a hearing on the motion. Under Local Rule 105.6, all motions are decided without a hearing unless otherwise ordered by the Court. The Court finds that no hearing is necessary, and so Awah's request is denied.

According to Awah, the disparate treatment began about six months after first becoming a patient at Clinic.  ECF No. 73-3 at 5.  Sometime after, Awah supposedly emailed the Clinic's "Executive body through an address obtained from the Clinic's website" to complain about his treatment.  ECF No. 73-4 at 4; *see also* ECF No. 73-3 at 6-7.  This email, however, is not in the record and Awah evidently does not have a copy of it.  *See* ECF No. 73-3 at 8.

On September 8, 2020, Awah wrote a formal complaint entitled, "Horrible Service at the Clinic," addressed to a Mansfield Kaseman employee, Nancy Hartman.  ECF No. 76-1 at 1; *see also* ECF No. 73-4 at 1, 4.[2]  The letter describes "a high level of appalling service" by a receptionist at the Clinic, which resulted in "an extremely long delay" in processing Awah's renewal request for Montgomery County's medical assistance program.  ECF No. 76-1 at 1.  Awah further complained that "[t]his woman creates the impression that she is there to serve only her brown-skinned Latino people."  *Id.*  Nothing in the record confirms that Hartman or Mansfield Kaseman in fact received the letter.  ECF No. 73-4 at 4.

Awah next filed suit in this Court.  ECF No. 1.  The Complaint alleges that the Clinic and its employees provided Awah with inferior treatment relative to the Clinic's predominately Latino patient population.  *See generally* ECF No. 1.  More specifically, the Complaint avers that Awah was subjected to verbal abuse; experienced comparatively longer wait times; and was denied referrals for various procedures—namely a colonoscopy—and consultations with specialists, including a nephrologist, urologist, and ophthalmologist.  *Id.* ¶¶ 31-39.  Altogether, the Complaint asserted nine counts against the Clinic and four individual defendants.  On

---

[2] At his deposition, Awah estimated that he sent the Hartman letter "between six months to one year after the first complaint[.]"  ECF No. 73-3 at 8.  However, the letter itself suggests that Awah did not draft it until several years later, on September 8, 2020.  ECF No. 76-1 at 1.  Moreover, the parties dispute Hartman's precise role at the Clinic.  Awah characterizes Hartman as "the Clinic's supervisor," whereas the record reflects that Hartman was a Nurse Practitioner with no supervisory responsibilities.  *Compare* ECF No. 73-4 at 1, *with* ECF No. 73-5 at ¶¶ 4-5.

December 30, 2021, the Court dismissed all individual defendants, and all counts save for Count I, which alleges race discrimination under Title VI of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000d *et seq.* ("Title VI").  ECF Nos. 32 & 33.  Thereafter, discovery ensued.

During discovery, Awah moved for a subpoena to issue (ECF No. 58), which the Court denied.  ECF No. 63.  Discovery concluded on September 4, 2022.  ECF Nos. 49 & 62. Nonetheless, Awah proceeded to file motions to extend discovery and amend the post-discovery joint status report (ECF Nos. 64 & 65), which the Court also denied.  ECF Nos. 63 & 66.  Awah next sought reconsideration of the Court's denial of his subpoena and extension requests.  ECF Nos. 67 & 68.  The Court denied the reconsideration requests as well.  ECF No. 70.

On October 6, 2022, Mansfield Kaseman moved for summary judgment, principally contending that no evidence supports any inference that Awah had been treated differently on account on his race.  ECF No. 73-1 at 8-13.  Awah has filed a flurry of his own motions.  ECF Nos. 72, 77, 79, & 84.  All motions are fully briefed, or the time to respond has long passed.  The Court first addresses Awah's motions, then turns to the motion for summary judgment.

## II.    Awah's Motions

### A.  Motion to Set Aside Ruling

First, Awah asks the Court to "set aside" its October 3, 2022, Letter Order (ECF No. 70) denying his earlier motions for reconsideration.  ECF No. 72.  The motion is properly construed as one brought pursuant to Federal Rule of Civil Procedure 60(b).  *See Robertson v. Deco Sec., Inc.*, No. WDQ-09-3093, 2011 WL 1322391, at *2 (D. Md. Apr. 1, 2011).  Under Rule 60(b), the requesting party "must make a threshold showing of timeliness, a meritorious claim or defense, and a lack of unfair prejudice to the opposing party."  *Bank v. M/V "Mothership"*, 427 F. Supp. 3d 655, 660 (D. Md. 2019) (citing *Aikens v. Ingram*, 652 F.3d 496, 501 (4th Cir. 2011)).  "After

a party has crossed this initial threshold, he then must satisfy one of the six specific sections of Rule 60(b)."[3]  *Id.* (quoting *Dowell v. State Farm Fire & Cas. Auto. Ins. Co.*, 993 F.2d 46, 48 (4th Cir. 1993)).  Importantly, "Rule 60(b) does not authorize a motion merely for reconsideration of a legal issue."  *United States v. Williams*, 674 F.2d 310, 312 (4th Cir. 1982); *M/V "Mothership"*, 427 F. Supp. 3d at 660.

Awah asks this Court to "set aside" the Letter Order on the grounds that the Court did not give him enough time to reply in support of his motions.  ECF No. 72.  Yet the Local Rules make clear that although a reply must be filed within fourteen days of when the opposition is served, it is neither mandatory nor accorded as a matter of right.  *See* D. Md. Loc. R. 105.2(a).  Accordingly, the Court does not have any obligation to wait for a reply brief before ruling on a pending motion.  *Accord White v. Date Trucking, LLC*, No. ELH-17-1177, 2018 WL 11469493, at *2 (D. Md. July 20, 2018) (denying motions before receiving full briefing to save time).

The Letter Order concerned Awah's motions for reconsideration (ECF Nos. 67 & 68) in which he sought to reopen discovery without good cause.  The Court denied the motions because nothing justified the extraordinary request.  ECF No. 70.  And in any event, Awah's reply brief—filed two days after the Court issued its Letter Order—would not have changed the Court's conclusion as to whether reconsideration was warranted.  *See* ECF No. 71.

---

[3] Federal Rule of Civil Procedure 60(b) explains that each of the following circumstances may constitute grounds for relief from a final judgment:

(1) mistake, inadvertence, surprise, or excusable neglect;
(2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);
(3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;
(4) the judgment is void;
(5) the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or
(6) any other reason that justifies relief.

Fed. R. Civ. P. 60(b).

In short, Awah has not satisfied any of the requirements of Rule 60(b).  The motion to set aside is therefore denied.

### B.  Motion to Request a Subpoena

Next, Awah asks this Court to issue a subpoena for Verizon phone records to document a phone call from a healthcare provider on March 10, 2021.  ECF No. 79.  The request is untimely and made without sufficient cause.

"A subpoena issued pursuant to Rule 45 is 'a form of discovery' and generally must be served within discovery deadlines." *Brightwell v. Hershberger*, No. DKC 11-3278, 2015 WL 9302933, at *2 (D. Md. Dec. 22, 2015) (citing *476 K Street, LLC v. Seneca Specialty Ins. Co.*, No. TDC-14-2739, 2015 WL 3464459, at *2 (D. Md. May 28, 2015)).  Here, discovery concluded on September 4, 2022.  ECF No. 49.  Although Awah asked to extend the discovery deadline by 60 days, he made no mention of needing this phone record from Verizon.  *See* ECF Nos. 62 & 64.  Also, Awah waited until October 18, 2022—almost two weeks after the dispositive motions deadline—to file the subpoena motion.  *See* ECF No. 49.  The motion, therefore, is untimely and is denied on this basis alone.

But even if the motion were timely, Awah has shown no good cause as to why the subpoena shall issue.  As the Court has already explained (ECF No. 63), pro se plaintiffs must obtain a Court order before any subpoena can issue.  *See* D. Md. Loc. R. 102.3.  Moreover, "the Court may require the litigant to state the reasons why the subpoena should be issued, and the Court may refuse to authorize issuance of the subpoena if it concludes that the subpoena imposes undue burden or expense[.]"  *Id.  See also* Fed. R. Civ. P. 45(d)(1) (litigants issuing subpoenas must "take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena.").  Awah makes cursory reference to the proof of a single call as being "critically

5

important" to his discrimination case, but does not explain how the information would advance the claim. ECF No. 79 at 1. A vague assertion of "importance," especially after the discovery period has ended, does not warrant issuance of the subpoena. Thus, the motion is denied.

### C. Motion to Suppress Deposition Transcript

Awah also moves to suppress Mansfield Kaseman's use of his deposition transcript as evidence in support of summary judgment. ECF No. 77. Awah contends that during the deposition, he requested to review the transcript pursuant to Federal Rule of Civil Procedure 30(e),[4] but that he never received a copy and "has not been afforded the opportunity to read and sign as required by law." ECF No. 77 at 1. In response, Mansfield Kaseman argues that Awah never requested a copy and, therefore, Rule 30 does not apply. ECF No. 81. Mansfield Kaseman has the better argument.

The deposition took place on August 9, 2022. ECF No. 73-3 at 1. Near the end, Awah and counsel for Mansfield Kaseman shared the following exchange:

| | |
|---|---|
| **Awah**: | All right. What's the next step? I get a copy of the deposition? |
| **Eric M. Rigatuso**: | You have to order that from the court reporter. |
| **Awah**: | Oh, I see. Okay. It will cost me some money? |
| **Rigatuso**: | That's between you and her. |
| **Awah**: | Oh, okay. All right. |

---

[4] Rule 30(e) provides in full:
Review by the Witness; Changes.
   (1) ***Review; Statement of Changes.*** On request by the deponent or a party before the deposition is completed, the deponent must be allowed 30 days after being notified by the officer that the transcript or recording is available in which:
        (A) to review the transcript or recording; and
        (B) if there are changing in form or substance, to sign a statement listing the changes and the reasons for making them.
   (2) ***Changes Indicated in the Officer's Certificate.*** The officer must note in the certificate prescribed by Rule 30(f)(1) whether a review was requested and, if so, must attach any changes the deponent makes during the 30-day period.
Fed. R. Civ. P. 30(e).

ECF No. 81-1 at 2-3. Thereafter, the parties continued talking off-the-record and the deposition concluded. *Id.* at 3. The certificate of the notary public, Sheri C. Stewart, affirms that the transcript "is a true record of the testimony given[.]" *Id.* at 4. Notably, the certificate does not reflect that Awah requested the opportunity to review the deposition transcript. *Id.*

Awah maintains that he invoked Rule 30(e) when he asked counsel about next steps. ECF No. 83 at 1. But even if he had, some failure to timely obtain the deposition transcript does not mandate exclusion of the evidence itself. Rule 30(e) "does not require the reporting company to send a copy of the transcript to a party" but rather "requires only that the reporting company make the transcript 'available' for review and/or provide a copy of the transcript upon payment of 'reasonable charges.'" *Williams v. Kettler Mgmt. Inc.*, No. CBD-12-1226, 2014 WL 509474, at *2-3 (D. Md. Feb. 5, 2014) (rejecting motion to strike deposition transcript for failure to follow Rule 30(e)); *see also Lane v. Sys. App. & Techs., Inc.*, No. DKC 13-3566, 2015 WL 1013449, at *2-3 (D. Md. Mar. 6, 2015) (denying motion to suppress deposition transcript where plaintiff had requested review under Rule 30(e) but did not timely submit proposed changes). Awah does not suggest that he ever attempted—either through Stewart or Mansfield Kaseman— to obtain the transcript after the deposition concluded. *See generally* ECF Nos. 77 & 83. Thus, the motion to suppress deposition transcript is also denied.

### D.  Motion for Leave to File Sur-reply

Awah also asks for leave to file a sur-reply in connection with Mansfield Kaseman's summary judgment motion. ECF No. 84. Under this Court's Local Rules, "[u]nless otherwise ordered by the court, surreply memoranda are not permitted to be filed." D. Md. Loc. R. 105.2(a). Although "[s]ur-replies are disfavored in this District[,]" *Chubb & Son v. C & C Complete Servs., LLC*, 919 F. Supp. 2d 666, 679 (D. Md. 2013), they "may be permitted when

the moving party would be unable to contest matters presented to the court for the first time in the opposing party's reply." *Khoury v. Meserve*, 268 F. Supp. 2d 600, 605 (D. Md. 2003). This is not that situation. Indeed, Awah concedes that Mansfield Kaseman does not raise any new arguments in its reply. ECF No. 84-1 at 1. Awah cites no reason that a sur-reply is necessary. And, after having reviewed the proposed sur-reply, the Court is confident that if accepted, the sur-reply would not change the summary judgment analysis. The motion to file a sur-reply is denied.

The Court next turns to Mansfield Kaseman's motion for summary judgment.

## III.   Summary Judgment

### A.   Standard of Review

Summary judgment is appropriate when the Court, viewing the evidence in the light most favorable to the non-moving party, finds no genuine disputed issue of material fact, entitling the movant to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Emmett v. Johnson*, 532 F.3d 291, 297 (4th Cir. 2008). "A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003) (quoting former Fed. R. Civ. P. 56(e)); *see also Williams v. Giant Food Inc.*, 370 F.3d 423, 433 (4th Cir. 2004) ("[The nonmoving party's] self-serving opinion . . . cannot, absent objective corroboration, defeat summary judgment."). "A mere scintilla of proof . . . will not suffice to prevent summary judgment[.]" *Peters v. Jenney*, 327 F.3d 307, 314 (4th Cir. 2003). But "a court should not grant summary judgment 'unless the entire record shows a right to judgment with such clarity as to leave no room for controversy and establishes affirmatively that

the adverse party cannot prevail under any circumstances.'" *Campbell v. Hewitt, Coleman & Assocs., Inc.*, 21 F.3d 52, 55 (4th Cir. 1994) (quoting *Phoenix Sav. & Loan, Inc. v. Aetna Casualty & Sur. Co.*, 381 F.2d 245, 249 (4th Cir. 1967)).  Where the party bearing the burden of proving a claim or defense "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial," summary judgment against that party is warranted.  *Celotex*, 477 U.S. at 322.

### B.  Analysis

The sole surviving claim alleges that Mansfield Kaseman intentionally discriminated against Awah based on his race when it provided him "disparate healthcare services . . . compared to similarly situated Latino patients" in violation of Title VI.  ECF No. 1 ¶¶ 64-67.  Title VI "prohibits 'any program or activity receiving Federal financial assistance' from discriminating against any person 'on the ground of race, color, or national origin.'"  *Sharpe v. Prince George's Cnty. Gov't*, No. TDC-17-3799, 2021 WL 928177, at *10 (D. Md. Mar. 11, 2021) (quoting 42 U.S.C. § 2000d); *see also Ratliff v. Wake Forest Baptist Med. Ctr.*, No. 1:13CV991, 2014 WL 197809, at *2 (M.D.N.C. Jan. 14, 2014) (citing *United States v. Baylor Univ. Med. Ctr.*, 736 F.2d 1039, 1044–46 (5th Cir. 1984)) ("Title VI affords a cause of action to a patient who alleges racial discrimination in the care given by a medical facility that accepts any federal funds.").  Thus, a colorable Title VI claim requires that the defendant "received federal financial assistance and engaged in intentional racial discrimination."  *Glenn v. Wells Fargo Bank, N.A.*, No. PX 15-3058, 2017 WL 371956, at *15 (D. Md. Jan. 26, 2017), *aff'd*, 710 F. App'x 574 (4th Cir. 2017).

Mansfield Kaseman acknowledges receiving federal funds through a Paycheck Protection Program ("PPP") loan secured in May of 2020.  ECF No. 73-1 at 2, 8; *see also* ECF No. 73-2 at

1-3.  Yet under Title VI, "courts have consistently held that the funds must be received during the relevant time period of the alleged discrimination for a cause of action to survive." *Johnson v. Board of Educ. of Prince George's Cnty.*, No. PJM 11-1195, 2014 WL 3778603, at *1 (D. Md. July 29, 2014).  Accordingly, Mansfield Kaseman argues—and Awah does not meaningfully dispute—that it "was not bound by Title VI until May 4, 2020[,] when it accepted the PPP loan." ECF No. 73-1 at 8.  The Court agrees, and therefore will only consider instances of alleged intentional discrimination taking place after receipt of the PPP loan.

As to intentional discrimination, Title VI discrimination claims are analyzed under the well-established burden-shifting framework announced in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  *See Maisha v. Univ. of N.C.*, 641 F. App'x 246, 250 (4th Cir. 2016); *Middlebrooks v. Univ. of Md.*, 166 F.3d 1209 (Table), 1999 WL 7860, at *4 (4th Cir. 1999) (explaining that Title VI claims "are appropriately analyzed under the Title VII proof scheme"). To survive summary judgment, some evidence must support a prima facie showing that the plaintiff belonged to a protected class and received adverse treatment under circumstances giving rise to an inference of discrimination.  *See Ratliff*, 2014 WL 197809, at *2.  Although comparator evidence is not required to demonstrate discriminatory animus, *see Bryant v. Aiken Reg'l Med. Ctrs., Inc.*, 333 F.3d 536, 545 (4th Cir. 2003), a plaintiff relying on such evidence must put forward comparators who are "similar in all relevant respects."  *Haywood v. Locke*, 387 F. App'x 355, 359 (4th Cir. 2010).  If record evidence supports the prima facie showing, then the burden shifts to the defendant to supply a legitimate, non-discriminatory reason for the disparate treatment.  If the defendant adduces such evidence, the burden shifts back to the plaintiff to generate some evidence that the stated reason was pretext for discrimination.  *Texas Dep't of Cmty. Affs. v. Burdine*, 450 U.S. 248, 254-56 (1981).

Mansfield Kaseman maintains that no record evidence, viewed most favorably to Awah, supports any inference of racial discrimination.  ECF No. 73-1 at 8-13.  The Court agrees. Awah's liability theory rests on supposed harassment that Awah experienced every time he visited the Clinic as compared to the Latino patients who would be "gently processed without any confrontation or altercation" during intake.  ECF No. 1 ¶¶ 26-28.  But no evidence supports this allegation.  Even Awah himself could not offer any particulars at his deposition; he could not identify any individual Latino patients who allegedly experienced a smoother intake process or even confirm in any respect that other patients at the Clinic are, in fact, Latino.  ECF No. 73-3 at 9-10.  Because Awah has failed to generate any evidence to support otherwise conclusory representations as to disparate treatment, no reasonable factfinder could conclude that Awah experienced verbal harassment motivated by racial discrimination.

The Complaint further avers that Mansfield Kaseman employees unnecessarily delayed Awah's medical visits "by keeping [him] in the consulting room long after the consultation was over[.]"  ECF No. 1 ¶ 36.  But again, at his deposition, Awah was unable to identify any individual Latino patients who experienced comparatively shorter wait times.  ECF No. 73-3 at 14.  Awah also conceded that he did not know what treatment any Latino patients were receiving at the Clinic, and therefore could not compare their visits to his own.  *Id.* at 17.  And though the Complaint avers that "Latinos spend an average of about 30 minutes for their Clinic visit," ECF No. 1 ¶ 36, Awah explained at his deposition that this figure was simply an estimate that he had calculated.  ECF No. 73-3 at 15 ("I have a very good conceptualization of what the averages are and if I go to a place and I look at the time somebody was, you know, at a place, I can have a very good idea of the average time that a person spends there."); *see also id.* at 16 ("I used mental averages.").  From this testimony, no reasonable jury could conclude that the Clinic

intentionally discriminated against Awah by unnecessarily prolonging his visits compared to Latino patients.

Last on Awah's list of perceived offenses, the Complaint avers that the Clinic denied him referrals to specialists whereas "all Latino patients were referred to external specialists."  ECF No. 1 ¶ 38-39.  More specifically, the Complaint alleges that the Clinic had failed to refer Awah for an ophthalmology consultation (*id.* ¶ 41); nephrology consultation (*id.* ¶¶ 42-43); and colonoscopy (*id.* ¶¶ 44-47).  But even if the Clinic failed to make necessary referrals, no evidence suggests that discriminatory animus influenced this process.  At his deposition, Awah was not aware of any Latino patients who had received similar referrals under similar circumstances.  ECF No. 73-3 at 21-26.  Instead, discovery has demonstrated that Awah's claims were built on assumptions, not evidence.  ECF No. 76-1 at 5.[5]  Because no evidence supports that the Clinic treated Awah differently on account of his race, Awah's arguments regarding referrals by the Clinic are insufficient to raise an inference of intentional racial discrimination.

Ultimately, the Court does not doubt that Awah was put off by his experience at the Clinic.  And some evidence suggests that perhaps he had been treated less than professionally.  ECF No. 76-1 at 1, 3-4.  But viewing the record most favorably to Awah, no evidence supports a reasonable inference that Mansfield Kaseman contravened Title VI by treating him adversely on account of race.

Because Awah has failed to adduce any evidence to meet his prima facie burden, his claim fails for this reason alone.  But even if he had met the burden—which admittedly is "not onerous," *Burdine*, 450 U.S. at 253—the same failure of proof would render him unable to show

---

[5] Awah asserts that the Clinic failed to produce in discovery the lists of colonoscopy referrals from 2017, 2018, 2020, and 2021.  ECF No. 76 at 6, 8, 17.  But Awah asked only for referral documents for 2019, and the Clinic produced those responsive documents.  *See* ECF Nos. 76-1 at 2 & 82-2 at 6.  Accordingly, any failure of proof is not the Clinic's fault.

that the Clinic's treatment had no legitimate medical or professional basis, thus giving rise to an inference of pretext.  *See Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143 (2000). Simply put, no reasonable factfinder could credit Awah's suspicion that he had been treated poorly because he is African American and as compared to his Latino counterparts.  Thus, the Court must grant Mansfield Kaseman's motion.

## IV.    Conclusion

For the foregoing reasons, the Court DENIES Awah's myriad motions and GRANTS Mansfield Kaseman's motion for summary judgment.  A separate Order follows.


May 2, 2023
Date

/s/
Paula Xinis
United States District Judge

13